**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RACHEL KAY, and | : | |
| JOHN KAY and SUSAN KAY, *H/W*, | : | |
|       Plaintiffs, | : | |
| | : | |
|      v. | : | No. 5:26-cv-0009 |
| | : | |
| OFFICER KEVIN GODFREY, | : | |
| CHIEF CHRISTOPHER ENGELHART, | : | |
| JOHN/JANE DOES #1-5, HILLTOWN | : | |
| TOWNSHIP, COLIN WAHLERS, and | : | |
| JOHN WAHLERS and | : | |
| WENDY WAHLERS, *H/W*, | : | |
|       Defendants. | : | |

**O P I N I O N**
**Defendants Godfrey, Engelhart, and Hilltown Township's Motion to Dismiss, ECF No. 13 –**
**Granted in part**

**Joseph F. Leeson, Jr.**                                                     **April 7, 2026**
**United States District Judge**

## I.    INTRODUCTION

Plaintiffs bring this matter before the Court pursuant to 42 U.S.C. § 1983, on the alleged

grounds that several Hilltown Township law enforcement officers violated the rights of Joseph

W. Kay, Decedent, and his survivors, by executing a high-speed vehicle chase that led to the

Decedent's death. Plaintiff Rachel Kay, the Decedent's widow, brings this action individually

and as personal representative for his Estate, alongside Plaintiffs John and Susan Kay, the

Decedent's parents. Plaintiffs' federal claims include civil rights violations, unlawful seizure,

excessive force, failure to train or supervise, and supervisory liability, brought against

Defendants Hilltown Township, Officers Kevin Godfrey and Christopher Engelhart, and several

unnamed officers, labeled John and Jane Does #1-5 (collectively, "Hilltown Defendants").

Plaintiffs also bring several state law claims, including negligence, recklessness, wrongful death,

and loss of consortium, against the Hilltown Defendants and three individuals named Colin, John, and Wendy Wahlers. The Hilltown Defendants have since moved to dismiss all claims against them, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons below, the Motion to Dismiss is granted in part.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations

On the evening of June 1, 2024, Defendant Colin Wahlers (hereinafter "Wahlers") borrowed his parents' 2019 Polaris Ranger Off-Highway Utility Task Vehicle ("UTV"),[1] and drove it to the residence of Joseph W. Kay (Plaintiffs' Decedent, hereinafter the "Decedent"). Compl. ¶¶ 30-31. Wahlers had permission from his parents, John and Wendy Wahlers (hereinafter "Mr. and Mrs. Wahlers"), to use their UTV, *id.* at ¶ 32, though the UTV was not designed for use on regular streets and roadways, *id.* at ¶ 34. Around 1:00 a.m. on June 2, 2024, Wahlers and the Decedent left the Decedent's residence for a ride in the UTV. *Id.* at ¶ 36. Wahlers was driving, and the Decedent was a passenger. *Id.* Wahlers drove through a stop sign, drove over the lawn around an eating establishment, reentered the roadway, and drove through another stop sign. *Id.* at ¶ 39. Defendant Police Officer Kevin Godfrey (hereinafter "Officer Godfrey") of the Hilltown Township Police Department was "in a stationary position in his patrol car in close proximity to that intersection," *id.* at ¶ 38, where he "observed the UTV committing various motor vehicle violations," *id.* at ¶¶ 41. Officer Godfrey then chose to follow the UTV, and upon getting closer, "activated his emergency lights and later his siren to initiate a traffic stop." *Id.* at ¶ 51. Wahlers "slowed down but did not stop" the UTV, *id.* at ¶ 52, and proceeded to turn right onto another street, bypassing another stop sign, *id.* at ¶ 53. A police

---

[1]   A UTV is a type of All-Terrain Vehicle ("ATV"). Compl. at ¶ 31.

chase ensued, with both vehicles reaching "speeds nearing 70 miles per hour (thirty miles per hour over the posted speed limit)," and with only one car length distance between them. *Id.* at ¶ 65. Wahlers accelerated the speed of the UTV, *id.* at ¶ 68, and, at times, swayed partially off the roadway, *id.* at ¶ 66. Wahlers then attempted to make a sharp right turn onto a different road, *id.* at ¶ 73, at which point "the UTV's back end slid out, went airborne, flipped on the driver's side and completed a barrel roll," *id.* at ¶ 74. "The UTV landed on its passenger side and came to an uncontrolled rest on the grass," *id.* at ¶ 75, partially ejecting Wahlers and the Decedent, *id.* at ¶ 76. The Decedent suffered a head injury and excessive bleeding from the impact. *Id.* at ¶ 78. He was found motionless, yet still "alive and struggling to breathe." *Id.* Emergency aid was provided, *id.* at ¶ 79, but to no avail. The Decedent was pronounced dead at the scene. *Id.* at ¶ 80.

### B.    Procedural History

On January 2, 2026, Plaintiffs Rachel Kay (the Decedent's widow)[2] and John and Susan Kay (the Decedent's parents) filed a Complaint in this Court against the following Defendants: Kevin Godfrey ("Officer Godfrey"); Christopher Engelhart, Chief of the Hilltown Township Police Department; Hilltown Township; unnamed officers John and Jane Does #1-5; Colin Wahlers; and John and Wendy Wahlers (h/w). *See* Compl., ECF No. 1. The Complaint brings five federal causes of action pursuant to 42 U.S.C. § 1983, including: a civil rights claim grounded in a state-created danger theory (Count I); a claim for unlawful seizure under the Fourth Amendment (Count II); a claim for excessive force under the Fourth Amendment (Count III); a *Monell* claim for failure to train or supervise (Count IV); and a supervisory liability claim

---

[2]    Plaintiff Rachel Kay is suing individually and as personal representative for the Decedent's Estate.

(Count V).[3] *See id.* The Complaint also brings seven state-law causes of action, including: negligence (*see* Counts VI, VII, and VIII); recklessness (*see* Counts VI and VII); negligent entrustment (Count IX); wrongful death (Count X); a survival action (Count XI); and loss of consortium (Count XII). *See id.*

On February 11, 2026, the Hilltown Defendants moved to dismiss all claims against them (Counts I-V, VII, and X-XII) pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs' claims for unlawful seizure and excessive force must be dismissed because the Complaint fails to allege a Fourth Amendment seizure, that the state created danger claim must be dismissed because Officer Godfrey's actions did not shock the conscience, and that the claims for failure to train or supervise and supervisory liability must be dismissed because the Complaint fails to allege a constitutional violation. *See* Motion to Dismiss ("Motion"), ECF No. 13. Plaintiffs responded to the Motion to Dismiss on February 25, 2026. *See* ECF No. 18. The Hilltown Defendants filed a Reply thereto, on March 2, 2026, *see* ECF No. 23, and Plaintiffs filed a Sur-Reply in further support of their Motion to Dismiss, on March 10, 2026, *see* ECF No. 26. The Court is now ready to render a decision on the Motion.

---

[3]    In Count I, Plaintiffs allege that the Hilltown Defendants—Hilltown Township, Officer Godfrey, Christopher Engelhart, and John and Jane Does #1-5—deprived the Decedent of his rights to "safety, bodily integrity, well-being, liberty, and substantive due process" by "engaging in an unjustified high-speed pursuit" that placed the Decedent in harm's way. Compl. at ¶¶ 110-12. Count II alleges that the "Decedent was subjected to [an] unlawful seizure in violation of the Fourth Amendment to the United States Constitution," *id.* at ¶ 128, because "Officer Godfrey intentionally applied force to terminate Decedent's freedom of movement," *id.* at ¶ 125. Count III alleges that Officer Godfrey's force was excessive. *See id.* at ¶¶ 135-36. Count IV alleges that "Defendants Hilltown, Engelhart, and John/Jane Does #1-5 . . . fail[ed] to train or supervise patrol officers like Godfrey, and [failed] to train or supervise patrol officers in vehicle pursuits" generally, *id.* at ¶ 154, instead "maintain[ing] a widespread custom and practice of allowing its patrol officers to initiate and maintain vehicle pursuits over minor traffic, summary, and/or misdemeanor offenses," *id.* at ¶ 158. Count V alleges that Defendants Hilltown Township, Engelhart, and John/Jane Does #1-5 "were the individual or collective policymakers for establishing such things concerning vehicle pursuits." *Id.* at ¶¶ 161-62.

III.    **LEGAL STANDARDS**

A.    **Motion to Dismiss under Rule 12(b)(6) – Review of Applicable Law**

When deciding a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678-79 (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief . . . without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, a

"document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and italics omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

    **B.**      **42 U.S.C. § 1983 Claims – Review of Applicable Law**

Section 1983 of Title 42 of the United States Code is the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Moreover, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

"In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury." *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The statute of limitations for personal injury actions in Pennsylvania is two years. *See id.*; 42 Pa. C.S. § 5524. "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp.*, 142 F.3d at 599. "Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001). The Rule provides: an "amendment to a pleading relates back

to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

### C.    Fourth Amendment Unlawful Seizure – Review of Applicable Law

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure "does not occur whenever there is a governmentally caused termination of an individual's freedom of movement," nor even whenever a government actor *desires* to terminate an individual's freedom of movement. *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989). Rather, a Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Id.* at 597 (emphasis in original).

### D.    Fourth Amendment Excessive Force – Review of Applicable Law

"To state a claim for excessive force under the Fourth Amendment, [the plaintiff] must show that a 'seizure' occurred and that it was unreasonable." *Phong Duong v. Telford Borough*, 186 F. App'x 214, 216 (3d Cir. 2006) (internal quotations omitted). "In evaluating whether a plaintiff's rights were violated by an arresting officer's use of force, a court must determine whether the officer's actions in gaining custody of the plaintiff were 'objectively reasonable.'" *Woods v. Grant*, 381 F. App'x 144, 146 (3d Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

E.    **Substantive Due Process – Review of Applicable Law**

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008), *overruled in part, on other grounds, by Knick v. Township of Scott, Pa.*, 588 U.S. 180 (2019). "[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of 'substantive due process.'" *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (citing *Graham*, 490 U.S. at 395).

### 1. State-Created Danger Theory – Review of Applicable Law

While the Due Process Clause of the Fourteenth Amendment "does not impose on the state an affirmative duty to protect its citizens," the state-created danger doctrine, adopted by the Third Circuit Court of Appeals, acts as an exception to that rule. *Van Orden v. Borough of Woodstown New Jersey*, 703 F. App'x 153, 156 (3d Cir. 2017) (citing *Phillips*, 515 F.3d at 235). To assert a state-created danger claim under the Fourteenth Amendment Due Process Clause, a plaintiff must plead:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotations omitted). The more-specific-provision rule mentioned in relation to substantive due process claims also applies

to claims brought under the state-created-danger doctrine. *See Wheeler v. City of Phila.*, 367 F. Supp. 2d 737, 746-47 (E.D. Pa. 2005) (finding that *Graham*'s more-specific provision rule applied, and that the Fourth Amendment reasonableness standard should guide unlawful seizure and excessive force determinations, even if brought pursuant to the state-created-danger theory).

### F.     *Monell* Liability – Review of Applicable Law

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). However, a municipality can be sued under Section 1983 in two contexts: First, if the municipality is responsible for a failure or inadequacy that "reflects a deliberate or conscious choice," *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019), such as a failure to train or supervise which "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact," *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)); *see also Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999). To establish "deliberate indifference" on the part of the municipality, a plaintiff must allege that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106 (citing *Carter*, 181 F.3d at 357).

Second, "[l]ocal governing bodies . . . may be sued where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Lebie v. Borough*, No. 13-cv-6819, 2014 WL 2085518, at \*2 (E.D. Pa. May 16, 2014) (quoting *Monell*, 436 U.S. at 690). "Liability is imposed when the policy or custom itself violates the Constitution, or where the policy or

custom is the 'moving force' behind a constitutional violation by an employee of the local body." *Id.* (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)).

"A policy is made 'when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id.* (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A custom may exist when, 'though not authorized by law, such practices of state officials are so permanent and well settled that they operate as law.'" *Id.* (quoting *Regan v. Upper Darby Twp.*, 363 F. App'x 917, 923 (3d Cir. 2010)). "Custom requires proof of knowledge and acquiescence by the decisionmaker." *Robinson v. City of Phila.*, No. 15-1574, 2015 WL 5965003, at *7 (E.D. Pa. Oct. 13, 2015) (quoting *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009)). "It is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Lebie*, 2014 WL 2085518, at *2 (quoting *Andrews*, 895 F.2d at 1480); *see also id.* at *3 (concluding that Third Circuit case law "unequivocally imposes on [p]laintiff an 'obligation to plead in some fashion that [a natural person] had final policy making authority, as that is a key element of a *Monell* claim'") (cleaned up) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010)) (italics not in original).

G.      **Supervisory Liability - Review of Applicable Law**

"[I]n limited circumstances[,] supervisors may be held liable for the unlawful conduct of subordinates." *Diorio v. Harry*, No. 21-1416, 2022 WL 3025479 at *7 (3d Cir. Aug. 1, 2022). There are two theories of liability under which a supervisory defendant may be personally liable: (1) the defendant-supervisor participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations; or (2) the defendant, in his role as policymaker, acted with deliberate indifference in establishing and

maintaining a policy, practice, or custom which directly caused the plaintiff's constitutional harm. *See A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the second theory, the plaintiff "must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the [plaintiff's] risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).

## IV.   ANALYSIS

Where a specific Constitutional Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395. Accordingly, a substantive due process analysis—like that demanded by Plaintiffs' Count I—is only appropriate here if the underlying federal claims are not otherwise "covered by" a specific Constitutional provision, like the Fourth Amendment. The Court will therefore address Plaintiffs' claims in an order appropriate to satisfy *Graham*.

### A.   Unlawful Seizure and Excessive Force

The Court is first tasked with determining whether the facts pleaded in the Complaint allege a Fourth Amendment seizure, *i.e.*, "a governmental termination of freedom of movement through means intentionally applied." *Brower*, 489 U.S. at 596-97 (emphasis omitted). Plaintiffs allege that their "Decedent was subjected to [an] unlawful seizure in violation of the Fourth Amendment to the United States Constitution," Compl. at ¶ 128, because "Officer Godfrey

intentionally applied force to terminate Decedent's freedom of movement," *id.* at ¶ 125, referring to the vehicle pursuit of the UTV in which the Decedent was a passenger. The Hilltown Defendants argue that Plaintiffs cannot allege a Fourth Amendment seizure based on these facts. They are correct. The Supreme Court in *County of Sacramento v. Lewis* made clear that "a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment." 523 U.S. 833, 844 (1998), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). Nor could it, as a police chase suggests an active *attempt* to make a stop, not a stop itself. Even if Plaintiffs argue that Officer Godfrey succeeded in seizing the Decedent when the UTV was stopped by its fatal flip and crash, "a Fourth Amendment seizure does not occur *whenever* there is a governmentally caused termination of an individual's freedom of movement." *Id.* (citing *Brower*, 489 U.S. at 596–597) (emphasis added). Even if Officer Godfrey *desired* to terminate the Decedent's freedom of movement by making a traffic stop, this too is insufficient to demonstrate a Fourth Amendment seizure, unless it can be shown that "there [was] a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* (citing *Brower*, 489 U.S. at 596–597 (emphasis in original)). The facts of the *Lewis* case help to illustrate this intentionality requirement.

In *Lewis*, a police officer in pursuit of a speeding motorcycle accidentally struck its passenger when a sharp turn by the motorcyclist partially ejected the passenger, placing him in the path of the police vehicle mid-chase. *See id.* The facts in *Lewis* presented a closer case for unlawful seizure than the instant matter, because there, the pursuing police officer made direct contact with the passenger. Still, the Supreme Court in *Lewis* found that no Fourth Amendment seizure had occurred, because the officer had not *intended* to hit the passenger and immobilize him. *See id.* at 844-54. By contrast, the instant case does not involve any such contact. The facts

show that the impact of the UTV's crash rendered the Decedent immobile, Compl. at ¶ 78, though it remains in question whether it was Officer Godfrey's pursuit, or the sharp turn made by Wahlers, which proximately caused the UTV to barrel roll and "land[] on its passenger side," *id.* at ¶¶ 74-75. At most, the allegations in the Complaint suggest that Officer Godfrey only sought to stop the UTV "by the show of authority represented by flashing lights and continuing pursuit," which the Supreme Court held does not amount to a seizure for Fourth Amendment purposes. *Lewis*, 523 U.S. at 844 (citing *Brower*, 489 U.S. at 597 ("The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash.")). Plaintiffs have failed to show that Officer Godfrey, by continuing his police pursuit, intentionally applied means to restrict the Decedent's freedom of movement. Accordingly, Plaintiffs have failed to state a claim for unlawful seizure based on that pursuit. Since the Supreme Court made clear that no such claim can be brought on this factual basis, granting leave to amend of this cause of action would be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"), *abrogated on other grounds by*, *Iqbal*, 556 U.S. at 678. The Court will dismiss Count II of the Complaint with prejudice.

Having determined that no seizure occurred, the Court is also obligated to find that Plaintiffs fail to state a claim for excessive force under the Fourth Amendment. *Phong Duong*, 186 F. App'x at 216 ("To state a claim for excessive force under the Fourth Amendment, [the plaintiff] must show that a 'seizure' occurred and that it was unreasonable.") (internal quotations omitted). Since no seizure may be alleged on these facts, the Court finds that leave to amend the

excessive force claim would also prove futile. *See Alston*, 363 F.3d at 235. Count III of the Complaint will be dismissed with prejudice. Having found that Plaintiffs state no Fourth Amendment claims, the Court finds no bar to considering Plaintiffs' substantive due process claim under *Graham*'s more-specific provision rule. *See Graham*, 490 U.S. at 395.

### B.    State-Created Danger Claim

Section 1983 requires that Plaintiffs plead a deprivation of a constitutional right and show that the deprivation was caused by a person acting under the color of state law. *Phillips*, 515 F.3d at 235 (citing *Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir. 1996)). In Count I, Plaintiffs allege a deprivation of the Decedent's rights to "safety, bodily integrity, well-being, liberty, and substantive due process." Compl. at ¶¶ 110-11. The Court recognizes that "[i]ndividuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *See Phillips*, 515 F.3d at 235 (citing *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1369–73 (3d Cir. 1992) (en banc), *cert. denied*, 506 U.S. 1079 (1993)). Yet, Plaintiffs' civil rights claim can only survive a motion to dismiss if they have pleaded all four of the required elements for state-created danger. *See Bright*, 443 F.3d at 281.

Here, Plaintiffs fail to establish that Defendants acted with a degree of culpability that shocks the conscience, as needed for the second part of the state-created danger test. *See id.* In *Sanford v. Stiles*, the Third Circuit found an inverse relationship between a state actor's culpability and the amount of deliberation time that actor has:

> The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases.  In a "hyperpressurized environment," an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make "unhurried judgments," deliberate indifference is sufficient.

456 F.3d 298, 309 (3d Cir. 2006). The continuum created by this inverse relationship is said to present three possible standards by which courts can determine whether a state action has shocked the conscience: (1) deliberate indifference (where the state actor has plenty of time to deliberate); (2) gross negligence or arbitrariness (where the state actor has some, but not unlimited, time to deliberate); or (3) intent to cause harm (where the state actor has almost no time to deliberate). *Phillips*, 515 F.3d at 241 (citing *Sanford*, 456 F.3d at 306). "[I]n *any* state-created danger case, the state actor's behavior must *always* shock the conscience." *Sanford*, 456 F.3d at 310 (emphasis in original).

Of course, there are plenty of cases involving situations described by the middle standard of culpability, "when a state actor is not confronted with a 'hyperpressurized environment' but nonetheless does not have the luxury of proceeding in a deliberate fashion." *Id.* at 310. "Generally, this category will include situations in which the state actor is required to act 'in a matter of hours or minutes.'" *Id.* (quoting *Ziccardi v. City of Phila.*, 288 F.3d 57, 65 (3d Cir. 2002)). When deciding the culpability of an officer in such a situation, the relevant question for the court is "whether the officer consciously disregarded a great risk of harm." *Id.* In determining whether a defendant's actions rise to the level of conscious disregard, a court should examine the "apparent gravity of the risk" and whether the defendant can "be said to have disregarded" that risk. *See id.* at 311.

Here, after watching Wahlers commit multiple traffic offenses, Compl. at ¶¶ 41, 44, Officer Godfrey decided to initiate a traffic stop of the UTV—by turning on his lights and siren and following at a close distance, *id.* at ¶ 51. When Wahlers did not pull over the UTV, instead running another stop sign, Officer Godfrey made a choice to pursue the UTV. *Id.* at ¶¶ 52, 53, 61, 65. The ensuing vehicle chase reached speeds of up to 70 miles per hour, *id.* at ¶¶ 65, 72, and

when Wahlers made a sharp right turn, the UTV flipped and crashed, fatally injuring the Decedent, *id.* at ¶¶ 74-78, 80. Plaintiffs argue that these facts demonstrate culpability, but fail to narrow down the applicable standard, instead arguing that the Hilltown Defendants "were deliberately indifferent to the safety, bodily integrity, well-being, liberty, and substantive due process rights of Plaintiff's Decedent," *id.* at ¶ 111, that they "consciously disregarded a great risk of serious harm to the safety, bodily integrity, well-being, liberty, and substantive due process rights of Plaintiffs' Decedent," *id.* at ¶ 110, and that their actions "constituted an intent or purpose to cause harm to the Plaintiff's Decedent," *id.* at 112. As stated above, the relevant standard is whether the Hilltown Defendants consciously disregarded a great risk of harm to the Decedent, but the facts, as pleaded, do not support answering this question in the affirmative.

"A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects [or] their passengers." *Lewis*, 523 U.S. at 853. Here, the risk of danger in a high-speed chase, generally, might have been apparent to Officer Godfrey, but the risk of sudden death, or even the risk of inciting more reckless driving by Wahlers, might not have been. Even if Officer Godfrey knew there was a chance that a police chase (particularly one involving a UTV) could result in injury to the fleeing driver and his passenger, there is nothing in the Complaint to suggest that he consciously disregarded that risk. Rather, there is ample evidence to suggest that, by his show of authority, Officer Godfrey was trying to bring the UTV to a stop and eliminate the risk that Wahlers's reckless driving caused. These actions do not shock the conscience. The Court cannot find that Plaintiffs have demonstrated culpability on the part of Officer Godfrey or any of the Hilltown

16
040726

Defendants. Accordingly, Plaintiffs have not met their pleading burden for state-created danger and Count I of the Complaint will be dismissed without prejudice. *See Alston*, 363 F.3d at 235.[4]

### C.    Failure to Train or Supervise and Supervisory Liability

Since Plaintiffs have failed to state a claim against any state actor under the Fourth or Fourteenth Amendment, their *Monell* claim must fail as well. *See Mulholland v. Govt. Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (finding that if a municipal employee "inflicted no constitutional injury . . . it is inconceivable that [the municipality] could be liable")); *see also Zucal v. Cnty. of Lehigh*, 660 F. Supp. 3d 334, 353 (E.D. Pa. 2023) ("An underlying constitutional violation is required for

---

[4]    As an aside, the Court will again mention the close factual parallels between this case and the Supreme Court's decision in *County of Sacramento v. Lewis*, *see* 523 U.S. 833, insofar as it is instructive regarding another aspect of the state-created danger test: whether the resultant harm was a "fairly direct" result of state action. The police pursuit in *Lewis* was of a fleeing motorcyclist, who, like Wahlers, exceeded the speed limit, flouted traffic laws, and had an innocent passenger in tow. *See* 523 U.S. 833, 836-37. Similarly to the facts presented here, the patrol car in *Lewis* followed the motorcycle at close distance while both vehicles traveled at high speed, and the chase ended after the motorcyclist made a sharp turn, causing the motorcycle to tip over, injuring both the motorcyclist and his passenger. *See id.* at 837. The major difference between the instant case and *Lewis* is that the pursuing patrol car in *Lewis* actually struck the passenger once he had been ejected from the motorcycle, "propelling him some 70 feet down the road" and inflicting fatal injuries. *See id.* By contrast, here it appears to have been Wahlers's sharp turn of the UTV, and its ensuing flip and barrel roll, that resulted in the death of the Decedent. *See* Compl. at ¶¶ 73-80. Officer Godfrey is not alleged to have run the UTV off the road, to have made contact with the UTV, or to have caused Wahlers to make a right turn. Nor did Officer Godfrey strike the Decedent with his vehicle upon the Decedent's ejection from the UTV. Still, Plaintiffs assert that, by engaging in the pursuit at all, Officer Godfrey encouraged or incited Wahlers's reckless driving and created a dangerous situation for the Decedent. The Court disagrees, and finds (without needing to, given its dismissal for lack of culpability) that Plaintiffs' Count I also fails to satisfy the first state-created danger element, because the alleged harm was not shown to be a "fairly direct" result of Defendants' behavior. *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 283 (3d Cir. 2006) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 915-16 (3d Cir. 1997)).

a plaintiff to prevail on a *Monell* claim.") (citing *Mulholland*, 706 F.3d at 238 n.15).[5] To the extent Plaintiffs have alleged a deprivation of the Decedent's right to life, liberty, and bodily integrity under the Fourteenth Amendment, *see* section IV(B) *supra*, they still have not demonstrated that an identifiable state actor was responsible for that violation, *see id.* (finding that Plaintiffs failed to establish Officer Godfrey's culpability). Even if they had, the allegations in the Complaint fail to establish a policy or custom by which the Hilltown Defendants encouraged or "allow[ed] [their] patrol officers to initiate and maintain vehicle pursuits over minor traffic, summary, and/or misdemeanor offenses," Compl. at ¶ 158, or that a failure by the Hilltown Defendants to train or supervise their officers in this area amounted to deliberate indifference. Plaintiffs do not point to any identifiable policy within the Township's police department which engendered this alleged course of conduct and fail to identify the specific policymaker responsible for it. *See Forrest*, 930 F.3d at 105; *Lebie*, 2014 WL 2085518, at *3 (explaining that plaintiff must "plead in some fashion that [a natural person] had final policy making authority, as that is a key element of a *Monell* claim'"). Plaintiffs' broad allegations regarding a failure to train or supervise similarly fail to establish that the Hilltown Defendants were deliberately indifferent to the rights of persons with whom their officers would come into contact. *See Johnson*, 975 F.3d at 403.

Moreover, without establishing liability on the part of Officer Godfrey, there can be no municipal liability against Hilltown Township, nor supervisory liability against Police Chief Christopher Engelhart for the conduct of Officer Godfrey, his subordinate. Accordingly, Plaintiffs' claims for failure to train or supervise (Count IV), and supervisory liability (Count V)

---

[5]    The Court notes that a constitutional deprivation is also a threshold requirement of any claim brought pursuant to 42 U.S.C. § 1983. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

against Hilltown Township, Christopher Engelhart, and John and Jane Does #1-5, must be dismissed. This dismissal will be without prejudice. *See Alston*, 363 F.3d at 235. Since the Court has dismissed all of Plaintiffs' federal claims (Counts I-V) and granted limited leave to amend, it need not address Plaintiffs' state law claims (Counts VI-XII) at this time.[6] Because Plaintiffs have an opportunity to amend their Complaint to state a federal claim, the Court shall decline to exercise supplemental jurisdiction over the state law claims until Plaintiffs have pleaded a federal cause of action. *See Fernandez v. City of Elizabeth*, 468 F. App'x 150, 155 (3d Cir. 2012) (finding that district court did not abuse its discretion in declining to exercise supplemental jurisdiction over state law claims once federal cause of action was dismissed).

## V.    CONCLUSION

The Court finds that the Complaint fails to state a claim for state-created danger, unlawful seizure, excessive force, *Monell* liability, or supervisory liability. Counts I through V of the Complaint are therefore dismissed. Counts II and III are dismissed with prejudice. Counts I, IV, and V are dismissed without prejudice, and with leave to amend. The Court declines to exercise supplemental jurisdiction over the state law claims until Plaintiffs amend their pleading to state a federal question. Thus, the Hilltown Defendants' Motion to Dismiss is granted in part.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge

---

[6]    Plaintiffs are granted leave to amend Counts I, IV, and V of the Complaint, and advised that failure to state a federal claim will result in the Court declining to exercise supplemental jurisdiction over their state law claims.